IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT M. FENENBOCK,

        Petitioner,                  No. CIV S-97-1731 LKK DAD P

    vs.

DIRECTOR OF DEPARTMENT OF
CORRECTIONS,

        Respondent.           <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Petitioner is a state prisoner proceeding by counsel with a petition for writ of habeas corpus.  This case is one of five that have been related for administrative purposes.  On September 9, 2005, the cases came before the court for hearing of respondents' motions to dismiss the petitioners' amended petitions as containing untimely claims that do not relate back to claims that were timely filed.  Glenn R. Pruden appeared for the moving parties.  Jolie Lipsig appeared for petitioner Fenenbock.  The parties' arguments were heard, and the motions were taken under submission.  For the reasons set forth below, the undersigned will recommend that respondent's motion be granted.

/////

/////

1

PROCEDURAL HISTORY

On October 2, 1991, Gary Summar was murdered in Trinity County.  On December 16, 1991, Robert Bond, Leafe Dodds, Robert Fenenbock, Ernest Knapp, Anthony Lockley, and Bernard MacCarlie were arraigned in Trinity County Superior Court on charges of participating in the murder.  On October 5, 1992, Barbara Adcock, Cherri Frazier, and Sue Hamby were also arraigned in Trinity County on charges of participating in the murder.

Pretrial litigation in the Trinity County Superior Court lasted through September 1993.  During this time, motions for multiple juries, motions to determine the competence of a key government witness, motions for severance, motions for change of venue, motions to dismiss or demur, and other motions were resolved in the Trinity County Superior Court.  On August 16, 1993, the court ruled that there would be four separate trials, with two trials involving dual juries to be conducted in Solano County Superior Court and two additional trials to be conducted in either Stanislaus or San Joaquin County.  Subsequently, however, Ernest Knapp was dismissed as a defendant, and the remaining defendants were prosecuted in three rather than four trials.

The first two trials were conducted in Solano County, while the third was conducted in Contra Costa County.  All three trials were prosecuted by Robert Maloney, a special prosecutor appointed to the case.  Defendants Hamby, Fenenbock, and Frazier were tried in the first trial, which began on November 15, 1993, and concluded on February 4, 1994; judgment was entered on March 16, 1994.  Defendants Bond, MacCarlie, and Dodds were tried in the second trial, which commenced in September 1994; judgment was entered on January 20, 1995. The trial of defendants Adcock and Lockley was conducted in 1995.

I. Petitioners Hamby, Fenenbock, and Frazier

In the first trial, defendant Fenenbock was convicted of first degree murder, with enhancements for use of a weapon and infliction of great bodily injury, but was acquitted of conspiracy to commit murder.  Defendants Hamby and Frazier were convicted of conspiracy to commit murder but were acquitted of murder.

On appeal, defendant Fenenbock raised seven claims, alleging there was insufficient evidence to support his conviction, two jury instructions were erroneous, several errors stemming from the testimony of child witness Randy Hogrefe, and the trial court erroneously allowed rebuttal witnesses.  Defendant Hamby joined in the claims raised by defendants Fenenbock and Frazier and raised additional claims concerning jury instructions and trial court error with regard to rebuttal evidence.  Defendant Frazier joined in the claims raised by defendants Hamby and Fenenbock and raised additional claims concerning jury instructions and her sentence.  Defendant Frazier also filed a state habeas petition claiming ineffective assistance of trial counsel.

In a partially published opinion filed on July 1, 1996, People v. Fenenbock, et al., 46 Cal. App. 4th 1688 (1996), the California Court of Appeal for the First Appellate District affirmed the judgments of conviction entered against defendants Hamby, Fenenbock, and Frazier and denied defendant Frazier's habeas petition.  On October 2, 1996, the California Supreme Court denied review.  The defendants did not file petitions for certiorari in the United States Supreme Court.

On January 31, 1997, Sue Hamby filed a pro se federal habeas petition raising two claims.  The respondent filed an answer to her petition on April 11, 1997, and a pro se traverse was filed on May 14, 1997.  On September 12, 1997, Robert Fenenbock filed a pro se federal habeas petition raising seven claims, and on November 20, 1997, Cherri Frazier filed a pro se federal habeas petition raising two claims.  On December 4, 1997, the Federal Defender was appointed to represent petitioner Fenenbock.  The Hamby, Fenenbock, and Frazier cases were related for administrative purposes on December 24, 1997, and the Federal Defender was appointed to represent petitioners Hamby and Frazier.  Jolie Lipsig subsequently substituted in as counsel for petitioner Fenenbock, and Janice Lagerlof substituted in as counsel for petitioner Hamby.  At the initial status conference held on February 26, 1998, the undersigned granted the first of many continuances requested by petitioners for the purpose of obtaining and reviewing

3

the voluminous records of their trial and of the two subsequent trials. On March 16, 1999, the California Court of Appeal filed its decision in the consolidated appeals of co-defendants Bond, MacCarlie, Adcock, and Lockley. Petitioners Hamby, Fenenbock, and Frazier were eventually ordered by the undersigned to file amended petitions and any accompanying motions by May 1, 2000. However, on April 5, 2000, petitioners moved for leave to conduct discovery regarding claims not yet presented to any court. The motion was denied, and further continuances were granted.

On September 24, 2001, petitioners moved to hold their federal proceedings in abeyance. Petitioners indicated their intention to file state exhaustion petitions by November 16, 2001. In opposition, respondents argued that the statute of limitations had expired and any new claims would be untimely. In findings and recommendations filed November 1, 2001, the undersigned recommended that petitioners' joint motion be granted and that all petitioners be required to file a motion for leave to amend or an amended federal habeas petition within thirty days after disposition of their state habeas petitions. The findings and recommendations were adopted on December 4, 2001, and the Hamby, Fenenbock, and Frazier cases were stayed.

II. Petitioners Bond and MacCarlie

In the second trial in the Solano County Superior Court, defendant Dodds was acquitted of all charges. Defendant MacCarlie was convicted of conspiracy to commit murder, two counts of kidnaping, mayhem, and assault with a deadly weapon, plus enhancements for use of a weapon and infliction of great bodily injury, but the jury was unable to reach a verdict on the charge of murder. The trial court declared a mistrial on the murder charge against defendant MacCarlie. Defendant Bond's separate jury was also unable to reach a verdict on the charge of murder, and a mistrial was declared to that count. Defendant Bond was convicted of conspiracy to commit murder and acquitted of the remaining charges.

On appeal, defendant Bond claimed that there was insufficient evidence of conspiracy to commit murder, the trial court erroneously instructed the jury on the requisite intent

4

for conspiracy, and the trial court failed to require the jury to determine whether petitioner conspired to commit first or second degree murder.  Defendant Bond joined in all applicable arguments raised by defendant MacCarlie.  Defendant MacCarlie argued on appeal that (1) the trial court erroneously instructed the jury on the requisite intent for conspiracy, lesser included offenses to conspiracy to commit murder, and heat of passion; (2) trial counsel was ineffective because he failed to request instructions on lesser included offenses to conspiracy to commit murder; (3) the trial court erred by taking partial verdicts before replacing a juror who had become ill; and (4) the trial court erroneously calculated presentence credits.

In an unpublished opinion filed March 16, 1999, the California Court of Appeal for the First Appellate District affirmed the convictions of defendants Bond and MacCarlie but remanded for modification of defendant MacCarlie's presentence credits.  On June 30, 1999, the California Supreme Court denied review.  Neither defendant Bond nor defendant MacCarlie filed a petition for certiorari in the United States Supreme Court.

On October 29, 1999, Robert Bond filed a pro se federal habeas petition alleging that there was insufficient evidence of conspiracy to commit murder and that the jury instructions on conspiracy to commit murder violated due process.  The Federal Defender was appointed to represent petitioner Bond, and the case was set for a status conference.  Lindsay Anne Weston substituted in as counsel for petitioner Bond.  The court declined to relate the Bond case to the Hamby, Fenenbock, and Frazier cases.  Several continuances were thereafter granted in the Bond case.

On August 23, 2000, Bernard MacCarlie filed a pro se federal habeas petition alleging that the jury instructions on conspiracy to commit murder violated due process, the failure to give instructions on conspiracy to commit second degree murder violated due process and ex post facto laws, trial counsel was ineffective for failing to request an instruction on conspiracy to commit second degree murder, the trial court's failure to instruct on heat of passion violated due process and ex post facto laws, and the verdict was coerced as a result of the court's

1   taking partial verdicts before a juror was excused for illness.  Petitioner MacCarlie's application

2   to consolidate his case with petitioner Bond's was denied.  The court appointed the Federal

3   Defender to represent petitioner MacCarlie and set the case for a status conference.  Margaret

4   Littlefield substituted in as counsel for petitioner MacCarlie.  Thereafter, several continuances

5   were granted at the request of counsel for the various petitioners.

6           A status conference was held in the Bond and MacCarlie cases on October 26,

7   2001, and a scheduling conference was set for January 18, 2002.  The Bond and MacCarlie cases

8   were related to the Hamby, Fenenbock, and Frazier cases for administrative purposes on

9   December 12, 2001.  On January 18, 2002, a deadline was set for the filing of abeyance motions

10  by petitioners Bond and MacCarlie.  The motions were filed, and respondents opposed them on

11  the ground that the statute of limitations had expired and any new claims would be untimely.  In

12  findings and recommendations filed April 23, 2002, the undersigned recommended that

13  petitioners' motions be granted and that each petitioner be required to file an amended federal

14  habeas petition within thirty days after disposition of their state habeas petitions.  The findings

15  and recommendations were adopted on May 20, 2002, and the Bond and MacCarlie cases were

16  stayed.

17  III. Further State Court Proceedings

18          On November 26, 2001, petitioner Hamby filed a habeas petition in the California

19  Supreme Court raising nine claims, and petitioner Frazier filed a petition raising fifteen claims.

20  On December 10, 2001, petitioner Fenenbock filed a petition raising nine claims.  On July 19,

21  2002, petitioner MacCarlie filed a petition raising ten claims.  On August 20, 2002, petitioner

22  Bond also filed a petition raising ten claims.  In a single order filed June 25, 2003, the California

23  Supreme Court denied the exhaustion petitions filed by all five petitioners.

24  IV. Further Federal Court Proceedings

25          On various dates after August 4, 2003, four of the five petitioners filed amended

26  habeas petitions as a matter of right.  Petitioner Fenenbock's amended petition alleges ten claims,

including the seven raised in his original petition.  Petitioner Frazier's amended petition alleges sixteen claims, including the two raised in her original petition.  Petitioner Bond's amended petition alleges twelve claims, including the two raised in his original petition.  Petitioner MacCarlie's amended petition alleges fourteen claims, including the five raised in his original petition.  Because the respondent previously filed an answer to petitioner Hamby's original petition, petitioner Hamby filed a motion for leave to amend.  Respondent stipulated to the filing of petitioner Hamby's amended petition while reserving the right to raise a statute of limitations defense to any untimely claims.  Petitioner Hamby's amended petition alleges eleven claims, including the two raised in her original petition.

On December 5, 2003, respondents filed their first motions to dismiss petitioners' newly added claims as barred by the statute of limitations.  The Ninth Circuit subsequently ruled that the transaction or occurrence at issue in a federal habeas petition for purposes of Rule 15(c) is the petitioner's state trial and conviction and that all new claims alleged in an amended petition relate back to the date of filing the original petition and thereby avoid the one-year statute of limitations.  Felix v. Mayle, 379 F.3d 612 (9th Cir. 2004).  The undersigned recommended that respondents' motions to dismiss be denied, and the findings and recommendations were adopted on October 1, 2004.

On January 4, 2005, respondents moved to stay these proceedings pending Supreme Court action in Felix v. Mayle.  Respondents' motions were heard and denied on February 4, 2005, but respondents were granted six months to respond to the amended petitions.  On June 23, 2005, the Supreme Court held that new claims alleged in an amended habeas petition do not relate back to the date of the original petition if the new claims are supported by facts that differ in time and type from those set forth in the original petition.  Mayle v. Felix, 545 U.S. 644, 125 S. Ct. 2562 (2005).  Respondents renewed their motions to dismiss in light of the Supreme Court's decision with those motion being filed on August 4, 2005.

/////

THE PARTIES' ARGUMENTS

I. Respondent's Motion to Dismiss

Respondent moves to dismiss petitioner Fenenbock's amended petition on the ground that it contains claims that are untimely under the AEDPA statute of limitations and do not relate back to claims that were timely filed. Respondent asserts that petitioner was aware at all times of respondent's intention to oppose petitioner's newly exhausted claims as untimely, yet petitioner did not include in his amended petition any reasons why the new claims should not be dismissed as time barred. Respondent acknowledges that petitioner offered such reasons in opposition to respondent's first motion to dismiss, but respondent declines to assume petitioner will rely on the same reasons in opposing the renewed motion to dismiss.

Respondent contends that the new claims alleged in petitioner Fenenbock's amended petition are untimely. Respondent identifies the newly added claims as Claims 1-2, 4-5, and 9-10. (Resp't's Mot. to Dismiss filed Aug. 8, 2005, at 1.) Respondent sets forth a history of petitioner's proceedings in state and federal court that includes the following key dates:

| | |
|---|---|
| October 2, 1996 | California Supreme Court denied review on direct appeal |
| December 31, 1996 | State court judgment became final upon expiration of the time to file a petition for certiorari in the United States Supreme Court |
| September 12, 1997 | Federal habeas petition was filed, alleging seven claims |
| December 31, 1997 | One-year period of limitation expired |
| December 10, 2001 | First state habeas petition was filed in California Supreme Court, alleging nine claims |
| June 25, 2003 | California Supreme Court summarily denied the habeas petition |
| September 3, 2003 | Petitioner filed an amended federal habeas petition alleging ten claims, including the seven original claims (now numbered claims 3(a)-(d), 6, 7, and 8) |

Respondent points to the date on which petitioner's judgment became final, the date on which the statute of limitations expired, and the date, almost six years after the statute of limitations expired, on which petitioner filed his amended federal habeas petition raising new

claims.  Respondent concludes that he has met his burden to plead and prove that petitioner's

new claims are untimely and must be dismissed unless petitioner can meet his burden of

establishing a factual basis for tolling the statute in some way that will circumvent the limitations

period for him.  Respondent compares each of petitioner's new claims with those alleged in

petitioner's initial federal habeas petition and contends that not one new claim relates back to any

claim alleged in the original, timely pleading.

        At page 17 of the motion to dismiss, respondent offers a two-sentence argument

that part (a) of petitioner's new Claim 3 does not relate back to any of the claims in petitioner's

original petition because the operative facts for that part of Claim 3 are different in time and type

from the operative facts on which the original claims are based.[1]

II.  Petitioner's Opposition

        Petitioner Fenenbock argues first that respondent cannot now move to dismiss

different claims or assert different grounds for dismissal than those presented in respondent's

first motion to dismiss.  Petitioner asserts that the first motion sought dismissal of Claims 1(b),

1(c), 2, 4, 5, 9, and 10 solely on the ground that these claims are untimely, while the second

motion seeks to dismiss those claims and, in addition, Claims 1(a) and 3(a) as untimely and

further seeks dismissal of Claim 1 on the completely new ground of failure to state a cognizable

claim for relief and Claim 10 on the completely new ground that it is barred by Teague v. Lane.

Petitioner contends that Rule 12(g) of the Federal Rules of Civil Procedure prohibits successive

motions to dismiss and that, even if the Ninth Circuit has permitted respondents to make separate

motions to dismiss asserting different affirmative defenses, the respondent in this case is now

asserting the same affirmative defense against different claims.  Petitioner asserts that the court

---

        [1] This assertion is not entirely consistent with respondent's introductory identification of the newly added claims as "Nos. 1-2, 4-5, and 9-10" and with respondent's description of petitioner Fenenbock's amended petition as raising ten claims, "including the seven claims originally raised in 1997 (now numbered claims 3 (a)-(d), 6, 7, and 8)."  (See Resp't's Mot. to Dismiss filed Aug. 8, 2005, at 1 & 8.)

1  should hold respondent to the previous concessions that Claims 1(a) and 3(a) are timely and

2  should preclude respondent from seeking dismissal of claims 1 and 10 on any ground other than

3  timeliness.

4          Petitioner's second argument is that application of the statute of limitations to him

5  will result, and has resulted, in a miscarriage of justice because petitioner is actually innocent of

6  first-degree murder.  Petitioner presents a detailed discussion of the evidence that was presented

7  at trial and the new evidence that demonstrates his innocence.

8          Petitioner's third argument is that the statute of limitations should be equitably

9  tolled from September 12, 1997, the day on which he filed his original federal habeas petition, to

10  September 3, 2003, the day on which he filed his amended federal habeas petition.  Petitioner

11  contends that extraordinary circumstances beyond his control made it impossible to file a timely

12  amended petition during that time.  Petitioner cites the complexity of the case, petitioner's lack

13  of access to crucial records including those of his co-defendants, the stipulated continuances in

14  these proceedings, and the need to conduct sufficient investigation to exhaust state court

15  remedies properly.

16          Petitioner's fourth argument is that all the claims in his amended petition relate

17  back to the original petition.  Petitioner grounds this argument on an expansive view of the

18  "common core of operative facts" and the assertion that all of his new claims are merely new

19  legal theories based on the same factual evidence that comprises the common core of operative

20  facts underlying the claims alleged in the original petition.  Petitioner contends that the

21  respondents had notice throughout these related proceedings that the petitioners would raise new

22  constitutional claims and that therefore the respondents cannot now complain of lack of notice.

23          Petitioner asserts that he joins in all arguments raised by petitioners Hamby,

24  Frazier, Bond, and MacCarlie in opposition to the respondents' motions to dismiss.  Petitioner

25  does not cite any specific arguments in this regard.

26  /////

III.  <u>Respondent's Reply</u>

Respondent asserts that all of the reasons advanced by petitioner Fenenbock in opposition to the motion to dismiss are misplaced and that the motion should be granted.

A.  <u>Preclusion of New Grounds for Dismissal Based on Rule 12(g)</u>

In response to petitioner Fenenbock's assertion that respondent is precluded from filing a second motion seeking dismissal of different claims or asserting different grounds for dismissal, respondent argues that petitioner is mistaken.  Respondent asserts that the court's February 8, 2005 order specifically authorized respondent to file a second motion to dismiss and that the order was entered with the understanding that the law on relation back under Fed. R. Civ. P. 15(c) might change when the Supreme Court issued its opinion in <u>Mayle v. Felix</u>, which did in fact occur.  Respondent's view is that the court's order denying the first motion to dismiss without prejudice wiped the slate clean.  Respondent notes that, even if the court were to limit respondent's second motion to the ground of failure to relate back, petitioner will gain nothing from that limitation because respondent can plead failure to state a claim, including an argument that a claim is <u>Teague</u>-barred, in any subsequent pleading that is ordered or permitted.

B.  <u>Actual Innocence Gateway</u>

Turning next to petitioner's arguments concerning actual innocence, respondent argues that if there is an actual innocence exception to the AEDPA statute of limitations, <u>Schlup v. Delo</u> requires the petitioner to support a claim of actual innocence with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  513 U.S. 298, 324, 327 (1995).  Respondent asserts that a court reviewing such a claim is entitled to consider "how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence."  <u>Id.</u> at 332.

/////

1     Respondent argues that the evidence relied upon by petitioner Fenenbock –

2  MacCarlie's testimony in the second of the three trials, a declaration by Leafe Dodds in 2002,

3  Carmel Suther's testimony at two of the trials, and the alleged possibility of evidence

4  corroborating an alibi defense – does not meet the Schlup standard.  In particular, respondent

5  disputes petitioner Fenenbock's implication that co-defendant MacCarlie's testimony was

6  exculpatory.  Respondent asserts that co-defendant MacCarlie gave a bizarre hallucinatory

7  account of the events, testified that he did not see others at the scene of the crime but did not

8  state that he was the sole assailant, and did not exculpate any of the other co-defendants.

9  Respondent points to the testimony of defense experts whose opinion was that MacCarlie

10  suffered from blackouts and PTSD, which could cause a dissociative state or flashbacks where

11  the subject is unable to distinguish reality.  Respondent reasons that co-defendant MacCarlie's

12  trial testimony fails to establish petitioner's actual innocence because that evidence does not

13  qualify as a trustworthy eyewitness account that shows it is more likely than not that no

14  reasonable juror would have found petitioner guilty beyond a reasonable doubt.

15     With regard to the 2002 declaration of Leafe Dodds, respondent cites the fact that

16  Dodds was a co-defendant who was acquitted and who cannot be placed in jeopardy again for

17  anything he says about the murder.  Respondent asserts that co-defendant Dodds had an obvious

18  bias in favor of petitioner, a fellow resident of the insular campground community where the

19  murder occurred.  Respondent argues that a consideration of the likely credibility of this affiant

20  demonstrates that the probable reliability of the proffered evidence is minimal and that, even if

21  believed, the Dodds declaration does not prove petitioner Fenenbock's innocence because

22  petitioner could have joined in the fatal attack later, while co-defendant Dodds was driving down

23  the hill.

24     Respondent argues next that Carmel Suther's testimony at petitioner MacCarlie's

25  trial, stating that the blood on petitioner Fenenbock's knife was probably animal, cannot be

26  considered newly presented because the prosecution had conceded at petitioner Fenenbock's trial

that the analysis indicated the blood was from an animal, even though Carmel Suther had

testified at petitioner Fenenbock's trial that it was possible the blood on the knife was human.

Respondent points out that Suther had also testified at petitioner Fenenbock's trial that,

considering the quantity of blood and the nature of the test applied, if it had been human blood

she would have expected it to react in the test, and it did not.  Respondent argues that the

minimal difference in Suther's testimony at the two trials simply fails to establish petitioner's

actual innocence when evidence establishing that the blood on his knife was animal rather than

human was in fact introduced at petitioner's own trial.

Finally, with regard to petitioner Fenenbock's assertion that Tom Wolfe, Cindy

Arends, Gregory Bullard, Ernie Knapp, and Trena Knapp would all have provided corroboration

of petitioner's alibi defense, respondent asserts that petitioner has offered only allegations and

has not provided declarations from any of these witnesses.  Respondent cites the Supreme

Court's observation in Herrera v. Collins, 506 U.S. 390, 417 (1993), that affidavits signed long

after trial and affidavits based on hearsay are "particularly suspect."  Here, respondent notes,

petitioner has not ever provided any such affidavits for the court's consideration.

Respondent argues that the remainder of the evidence cited by petitioner

Fenenbock in support of his actual innocence claim is based on the petitioner's self-serving

characterization of the trial evidence and does not constitute new reliable evidence that would

meet the Schlup test.  Respondent contends that this purported new evidence fails when

considered in light of all the other evidence because there was significant evidence introduced at

trial establishing that petitioner participated in the killing:  Randy Hogrefe implicated petitioner,

and Patsy Brown, Sid Smith's wife, corroborated Randy's testimony, telling police that

MacCarlie, Fenenbock, and Bond drove to her house on the day of the murder, that Fenenbock

and Bond stayed more than an hour, that both men were excited and laughing, and that

Fenenbock said while they were at Sid Smith's house, "You don't have to worry about that child

molester anymore.  We took care of him."  Respondent also cites the evidence that petitioner

1  Fenenbock was involved in the earlier altercation at the top of the hill just before Gary Summar

2  was kidnapped, including Michael Roanhouse's testimony that petitioner Fenenbock repeatedly

3  punched Summar in the eye while accusing him of being a child molester and Sue Mendes's

4  testimony that petitioner Fenenbock told her she would not have to worry about finding

5  Summar's body while collecting mushrooms with her children, stated by petitioner while

6  motioning towards the mountains.  Respondent notes also that petitioner Fenenbock's own

7  account of the events that occurred at the top of the hill was inconsistent with the accounts of

8  everyone else who witnessed the events and that petitioner Fenenbock alone portrayed the victim

9  as the aggressor.  Respondent points to the state appellate court's finding that there was sufficient

10  evidence that petitioner Fenenbock committed a premeditated, deliberate, first degree murder.

11  On the basis of all of this evidence, respondent disputes petitioner's characterization of the trial

12  evidence against him as weak and concludes that petitioner has failed to show that it is more

13  likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.

14  Respondent concludes that the proffered evidence does not come close to qualifying as a gateway

15  to overcome the statute of limitations and that therefore no evidentiary hearing is required.

16       C.  Equitable Tolling

17       Respondent asserts that the authorities cited by petitioner do not justify six years

18  of equitable tolling in this case.  Respondent argues that the Supreme Court allowed tolling in

19  Burnett, the non-AEDPA case relied on by petitioner, on the basis of considerations related to

20  venue, misfiled pleadings, and national uniformity, considerations not applicable here.

21  Respondent contends that it is well established in the Ninth Circuit that the test for equitable

22  tolling under AEDPA is whether extraordinary circumstances beyond the petitioner's control

23  made it impossible for the petitioner to timely file his petition.  By that standard, respondent

24  argues, petitioner is not entitled to equitable tolling merely because of the complexity of his case,

25  his lack of access to the trial record and other resources when he filed his pro se habeas petition,

26  /////

1   or his reliance on the fact that respondent stipulated to continuances during the proceedings

2   before this court.

3          With regard to the stipulated continuances, respondent asserts that the respondents

4   did not agree at any time to waive the statute of limitations in these cases.  Respondent points out

5   that none of the stipulations mentioned the limitations period, and mere acquiescence in a

6   petitioner's requests for continuances cannot constitute an express waiver.  Respondent argues

7   that there are no other factors in this case that could reasonably have been relied upon by the

8   petitioners or their counsel as a basis for assuming that the respondents were agreeing to waive

9   the limitations period.  Respondent argues further that, aside from the fact that the respondents

10  had no duty to research petitioners' cases and advise petitioners' attorneys of their deadlines, the

11  statute of limitations had already expired prior to any of the stipulations to continuances, which

12  could not have revived and extended the limitations period.  Respondent argues that petitioners

13  could and should have developed their new claims much earlier.

14         In response to petitioner's argument that this court previously found that

15  petitioners' counsel acted diligently in pursuing new claims, respondent observes that the

16  determination was made in the context of granting a discretionary motion for abeyance and did

17  not resolve the separate issue of whether petitioners are entitled to equitable tolling under the

18  applicable legal standards.

19         D.  Relation Back

20         Respondent reiterates the contention that Claims 1-2, 4-5, and 9-10 do not relate

21  back.

22         1.  Claim 1

23         Respondent denies conceding that any part of Claim 1, in which petitioner alleges

24  actual innocence, relates back to any claim stated in the original petition.  Respondent contends

25  that petitioner's Note of Attention, which was found by this court not to be a claim, may have

26  been generously construed by the respondents in the past as providing notice of a future claim,

15

but that any such concession, if it was a concession, was based on <u>Anthony v. Cambra</u>, 236 F.3d
568 (9th Cir. 2000), in which the Ninth Circuit had relied on notice as the touchstone of whether
a claim relates back under Fed. R. Crim. P. 15.  Respondent argues that the Supreme Court did
not rely on the element of notice in explaining the scope of relation back in the habeas context in
<u>Mayle v. Felix</u> and that respondent should be relieved of any concession made on the basis of
Ninth Circuit authority that no longer appears to be valid.  Respondent concludes that, because
the court found the Note not to be a claim, there is no claim to which petitioner's new Claim 1
can relate back.

2.  <u>Claim 2</u>

Respondent disputes petitioner's attempt to relate Claim 2, alleging that
petitioner's right to present a defense was denied by the scheduling of his trial before the trial of
co-defendants MacCarlie and Dodds, to petitioner's Note of Attention alleging actual innocence.
Respondent reiterates that the Note is not a claim to which any new claim can relate back and
further argues that the core operative facts for Claim 2 concern the order in which the defendants
were tried, the decision-making process of the trial court, and the trial court's application of state
law governing severance of trials and the court's docket rather than the core operative facts
supporting petitioner's claim of actual innocence.

3.  <u>Claim 3(a)</u>

Respondent denies having previously conceded the timeliness of Claim 3(a), in
which petitioner alleges that the court refused to order Randy Hogrefe to meet with defense
counsel and their investigators prior to testifying at trial.  Respondent asserts that the original
petition raised three claims concerning Randy Hogrefe's testimony:  Claim 4, that Hogrefe's
testimony was coerced, coached, and fabricated; Claim 5, that there was a time restriction on the
defense's cross-examination of Hogrefe; and Claim 6, that the defense was precluded from
eliciting testimony that Hogrefe had falsely accused his stepfather of misconduct – but that none
/////

16

1   of the core operative facts for those claims concerned whether the trial court improperly refused

2   to order Hogrefe to meet with the defense team prior to trial.

3         4.   Claim 4

4         Respondent argues that new Claim 4, alleging prosecutorial misconduct based on

5   the prosecutor's alleged presentation of false testimony by Officer Kartchner, statements made by

6   the prosecutor during closing argument, and prosecutorial tactics relative to witnesses other than

7   Randy Hogrefe, does not relate back to petitioner's original Claim 4, which alleged the coercing,

8   coaching, and fabricating of Hogrefe's testimony.

9         5.   Claim 5

10        Respondent argues that Claim 5, alleging violations arising from the showing of

11  the videotape made by Judge Letton, is untimely even if the factual predicate was not discovered

12  until petitioner's counsel obtained the videotape on June 8, 1999, because the statute of

13  limitations for that claim would have expired on June 8, 2000.

14        6.   Claim 9

15        Respondent disagrees with petitioner's assertion that Claim 9(a), alleging

16  ineffective assistance of trial counsel for failing to adequately challenge Randy Hogrefe's

17  testimony in five specific ways, relates to new Claim 3, which in turn relates to claims in the

18  original petition.  Respondent asserts that an ineffective assistance of counsel claim is an entirely

19  new claim for relief for which the elements of proof differ significantly from the elements

20  applicable to the substantive predicates for the claim.  Respondent argues that the standard for

21  proving the alleged ineffective assistance depends on facts other than those relevant to Claim 3,

22  which alleges only trial court errors regarding the presentation and impeachment of the testimony

23  of Randy Hogrefe.

24        Respondent disputes the assertion of petitioner Fenenbock's counsel that she did

25  not discover the factual predicate for Claim 9(a) until she consulted with an expert.  Respondent

26  contends that petitioner cannot rely on § 2244(d)(1)(D) for a later start date for the statute of

1   limitations on Claim 9(a) because the factual predicate for a claim consists of knowledge of the

2   facts supporting the claim, not the acquisition of evidentiary support for it.  Respondent argues

3   that petitioner could have consulted with an expert earlier and, moreover, did not need a

4   declaration in order to file a timely petition raising the claim.

5          With regard to Claim 9(b), alleging that defense trial counsel failed to investigate

6   or obtain the exculpatory testimony of co-defendants MacCarlie and Dodds, respondent argues

7   that this claim does not relate back to any claim of actual innocence presented in petitioner's

8   Note of Attention because the court has found that the note is not a claim and, furthermore, a

9   claim of ineffective assistance of counsel is different from the  underlying substantive claim of

10  actual innocence.

11          7.  Claim 10

12          With regard to Claim 10, alleging cumulative error, respondent cites the

13  arguments raised in the motion to dismiss.

14                                ANALYSIS

15          In findings and recommendations filed in the five related cases on August 11,

16  2004, the undersigned recommended that respondents' first motions to dismiss be denied

17  pursuant to Felix v. Mayle, 379 F.3d 612 (9th Cir. 2004).  Because the Felix decision was issued

18  on August 9, 2004, the undersigned recognized that renewed motions to dismiss might be

19  appropriate at a later time and therefore recommended that the motions to dismiss be denied

20  without prejudice.  (See Findings and Recommendations filed Aug. 11, 2004, at 16.)  The

21  findings and recommendations were adopted in full, and respondents' motions were denied

22  without prejudice on September 30, 2004.

23          By order filed February 8, 2005, the undersigned directed the respondents to

24  respond to the amended petitions by answer or motion to dismiss.  (See Order filed Feb. 8, 2005,

25  at 3.)  Taking into consideration the fact that the Supreme Court had granted certiorari in Mayle

26  v. Felix, the undersigned granted respondents six months to file and serve their responses.  On

                                        18

1  June 23, 2005, the Supreme Court reversed the Ninth Circuit's decision in Felix.  Mayle v. Felix,

2  545 U.S. 644, 125 S. Ct. 2562 (2005).  Respondents have properly renewed their motions to

3  dismiss the amended petitions as containing claims that are untimely.  Arguments unrelated to

4  the timeliness of petitioners' claims will not be considered by the court at this time and should be

5  raised in answers responsive to the claims that are found to be timely.

6  I.  The AEDPA Statute of Limitations

7          On April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA")

8  was enacted.  The AEDPA amended 28 U.S.C. § 2244 by adding the following provision:

> (d) (1)  A 1-year period of limitation shall apply to an application
> for a writ of habeas corpus by a person in custody pursuant to the
> judgment of a State court.  The limitation period shall run from the
> latest of –
>
> (A) the date on which the judgment became final by the
> conclusion of direct review or the expiration of the time for
> seeking such review;
>
> (B) the date on which the impediment to filing an
> application created by State action in violation of the Constitution
> or laws of the United States is removed, if the applicant was
> prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was
> initially recognized by the Supreme Court, if the right has been
> newly recognized by the Supreme Court and made retroactively
> applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or
> claims presented could have been discovered through the exercise
> of due diligence.
>
> (2) The time during which a properly filed application for State
> post-conviction or other collateral review with respect to the
> pertinent judgment or claim is pending shall not be counted toward
> any period of limitation under this subsection.

23  28 U.S.C. § 2244(d).  The one-year AEDPA statute of limitations applies to all federal habeas

24  corpus petitions filed after the statute was enacted and therefore applies to the present case,

25  which was filed after April 24, 1996.  See Lindh v. Murphy, 521 U.S. 320, 322-23 (1997).

26  /////

A.  Application of § 2244(d)(1)(A)

For purposes of 28 U.S.C. § 2244(d)(1)(A), petitioner Fenenbock's judgment became final on December 31, 1996, ninety days after the California Supreme Court denied review on appeal.  See Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999).  The one-year period of limitation began to run on January 1, 1997.  Petitioner Fenenbock did not file any state petitions for collateral relief in the year following December 31, 1996.  Accordingly, the one-year period of limitation ran without interruption from January 1, 1997, until it expired on December 31, 1997.

It is undisputed that the pro se federal habeas petition received from petitioner Fenenbock on September 12, 1997, was timely filed.  Petitioner's amended petition was filed by counsel on September 3, 2003, almost six years after the statute of limitations expired.  Any new claims alleged in the amended petition are barred by the AEDPA statute of limitations unless some other statutory provision applies or the claims are rendered timely under some applicable rule or doctrine.

B.  Application of § 2244(d)(1)(D)

Pursuant to § 2244(d)(1)(D), the one-year period of limitation will run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," if that date is later than the date on which the petitioner's judgment became final.  The language of § 2244(d)(1)(D) requires the court to determine the date on which the petitioner "could have discovered the factual predicate" of his claim, not the date on which the petitioner understood the legal significance of the facts known to him or the date on which he obtained evidence to support his claim.  Hasan v. Galaza, 254 F.3d 1150, 1154 & n.3 (9th Cir. 2001) (holding that the due diligence clock started ticking when the prisoner learned facts that supported a good faith basis for arguing prejudice arising from ineffective assistance of counsel, whether or not the prisoner understood the legal significance of the facts known to him); Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000) ("Time begins when the prisoner knows (or

1   through diligence could discover) the important facts, not when the prisoner recognizes their

2   legal significance."); <u>Flanagan v. Johnson</u>, 154 F.3d 196, 199 (5th Cir. 1998) ("Section

3   2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a habeas

4   petitioner gathers every possible scrap of evidence that might, by negative implication, support

5   his claim.").

6              Petitioner Fenenbock contends that the statute of limitations did not begin to run

7   on January 1, 1997, for Claims 5 and 9(a) in his amended petition.  Petitioner has demonstrated

8   that the factual predicate for Claim 5 was not discovered until habeas counsel obtained the voir

9   dire videotape on June 8, 1999.  However, counsel's receipt of the videotape triggered the

10  running of the one-year period of limitation, and the statute of limitations for Claim 5 expired on

11  June 8, 2000.  With regard to Claim 9(a), petitioner argues that the factual predicate was not

12  discovered until habeas counsel consulted an expert and received the expert's preliminary

13  assessment in March 2001.  Petitioner has not demonstrated that petitioner's expert relied on any

14  records not available to counsel in the Hamby, Fenenbock, and Frazier cases prior to 1999.  The

15  undersigned finds that petitioner knew or should have known the relevant facts supporting Claim

16  9(a) on a date prior to January 1, 2000.  If the statute of limitations began to run for Claim 9(a) as

17  late as January 1, 2000, the statute of limitations expired for that claim on January 1, 2001,

18  almost a year before petitioner filed his state exhaustion petition on December 10, 2001, and

19  could not be revived by the filing of the state petition.  Put another way, petitioner has not shown

20  that he could not have discovered the factual predicate for Claim 9(a) prior to December 10,

21  2000, i.e., a year prior to the filing of his state exhaustion petition.

22             Petitioner has therefore failed to demonstrate that either Claims 5 or Claim 9(a) in

23  the amended petition was timely filed by application of § 2244(d)(1)(D).

24  II.  <u>Relation Back of New Claims</u>

25             An application for a writ of habeas corpus "may be amended or supplemented as

26  provided in the rules of civil procedure applicable to civil actions."  28 U.S.C. § 2242.  <u>See</u> <u>also</u>

Rule 11, Fed. R. Governing § 2254 Cases (providing that the Federal Rules of Civil Procedure may be applied in habeas corpus proceedings to the extent that the rules of civil procedure are not inconsistent with any statutory provision or with the rules governing habeas cases); Fed. R. Civ. P. 81(a)(2) (providing that the Federal Rules of Civil Procedure are applicable to proceedings for habeas corpus "to the extent that the practice in such proceedings is not set forth in statutes of the United States, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Proceedings").

Under Federal Rule of Civil Procedure 15(a), a habeas petitioner may amend his pleadings once as a matter of course before a responsive pleading is served and may seek leave of court to amend his pleading at any time during the proceeding.  Mayle v. Felix, 545 U.S. 644, ___, 125 S. Ct. 2562, 2569 (2005).  Under Rule 15(c), a petitioner's amendments made after the statute of limitations has run will relate back to the date of his original pleading if the new claims arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.  Id. (citing Fed. R. Civ. P. 15(c)(2)).

In Mayle v. Felix, the Supreme Court explained that "[t]he 'original pleading' to which Rule 15 refers is the complaint in an ordinary civil case, and the petition in a habeas proceeding."  Id. at 2569-70.  The Court observed that the complaint in an ordinary civil case need only provide fair notice of the plaintiff's claim and the grounds on which the claim rests, while a habeas petition is required to specify all grounds for relief available to the petitioner and state the facts supporting each ground.  Id. at 2570.  Because of this difference between civil complaints and habeas petitions, the relation back of new habeas claims "depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims."  Id. at 2572.[2]  The common core of operative facts must not be viewed at too high a level of

---

[2]  See Jackson v. Roe, 425 F.3d 654, 660 n. 8 (9th Cir. 2005) ("Instead, held the Court, an amended claim in a habeas petition relates back for statute of limitations purposes only if it shares a 'common core of operative facts' with the original claim.) (quoting Mayle v. Felix, 125 S. Ct. at 2574).

generality, and an "occurrence" will consist of each separate set of facts that supports a ground for relief.  Id. at 2573.  See also United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005) ("[A] petitioner does not satisfy the Rule 15 "relation back" standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance."), cert. denied ___U.S.___, 126 S. Ct. 2906 (2006).  Applying these principles in Mayle, the Supreme Court ruled that the petitioner's new claim did not relate back to his original claim because the new claim arose from the petitioner's own pretrial interrogation and was different in time and place from his original claim, which arose from the pretrial police interrogation of a witness.  125 S. Ct. at 2572-73.

Neither the Supreme Court's analysis in Mayle nor the language of Rule 15 supports a conclusion that a new claim raised by a party in his amended pleading can relate back to a claim raised by another party in a separate pleading in the same action, much less to a claim raised by another party in a pleading in another action.  Rule 15(a) speaks repeatedly of "*a party*" amending "*the party's pleading*," and Rule 15(c) provides that "[a]n amendment of *a pleading* relates back to the date of *the original pleading* when . . . the claim or defense asserted in *the amended pleading* arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in *the original pleading*."  Fed. R. Civ. P. 15(a) and (c) (emphasis added).  Thus, in determining relation back pursuant to Rule 15(c), the only relevant pleadings are the party's original pleading and that same party's amended pleading.

While Rule 15(c) provides for relation back in three different circumstances, only one of the three provisions is applicable to habeas proceedings.  The rule, omitting only the provisions concerning service of the United States or any agency or officer thereof for purposes of Rule 15(c)(3), provides as follows:

/////

/////

**(c) Relation Back of Amendments.**  An amendment of a pleading relates back to the date of the original pleading when
    (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
    (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
    (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party. . . .

Fed. R. Civ. P. 15(c) (as last amended in 1993).

Rule 15(c)(1) does not apply to habeas proceedings because 28 U.S.C. § 2244(d), i.e., "the law that provides the statute of limitations applicable to the action," does not include a provision permitting relation back.

Rule 15(c)(2) is the provision applied to habeas proceedings by the Supreme Court in Mayle.  125 S. Ct. at 2566 ("This case involves two federal prescriptions:  the one-year limitation period imposed on federal habeas corpus petitioners by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d)(1); and the rule that pleading amendments relate back to the filing date of the original pleading when both the original plea and the amendment arise out of the same 'conduct, transaction, or occurrence,' Fed. Rule Civ. Proc. 15(c)(2).").

Rule 15(c)(3), which concerns amendments that change the party against whom a claim is asserted, is not applicable to habeas proceedings because there is only one possible petitioner and there are habeas statutes and rules that govern the naming of the proper respondent and the service of respondents.  Compare Fed. R. Civ. P. 15(c)(3) and Fed. R. Civ. P. 4(m) with Rule 2(a), Fed. R. Governing § 2254 Cases (requiring a petitioner currently in custody under a

24

1   state-court judgment to name as respondent the state officer who has custody of him) and Rule 4,

2   Fed. R. Governing § 2254 Cases (stating requirements for service of habeas petition and order).

3   See Rule 11, Fed. R. Governing § 2254 Cases; Fed. R. Civ. P. 81(a)(2).

4           Petitioners' reliance on the Advisory Committee Notes to the 1966 amendment to

5   Rule 15(c) is misplaced because, according to those very notes, the 1966 amendment amplified

6   the rule "to state more clearly when an amendment of a pleading changing the party against

7   whom a claim is asserted (including an amendment to correct a misnomer or misdescription of a

8   defendant) shall 'relate back' to the date of the original pleading" and in particular addressed a

9   problem that arose "in certain actions by private parties against officers or agencies of the United

10  States."  The 1966 amendment concerned only Rule 15(c)(3), which is not applicable to habeas

11  petitions, and the advisory committee notes addressed only the amendment of a pleading to

12  change the party against whom a claim or defense is asserted.  Those notes do not support a

13  conclusion that a habeas petitioner's new claims can relate back to the date of a pleading filed by

14  another habeas petitioner in a separate habeas proceeding.  In particular, the final paragraph of

15  the notes, referring to "[t]he relation back of amendments changing plaintiffs," is irrelevant in

16  habeas proceedings in which the only possible "plaintiff" is the state prisoner who is challenging

17  his state court conviction or sentence.  The undersigned rejects petitioners' argument that any of

18  their new claims relate back to claims raised by the other petitioners in their separate cases.

19          Petitioners' reliance on orders relating their cases is also misplaced.  Under the

20  Local Rules of Practice for the United States District Court for the Eastern District of California,

21  the court may assign two or more cases to the same district judge or magistrate judge, or both,

22  when doing so will "effect a substantial savings of judicial effort" and avoid a "substantial

23  duplication of labor."  Local Rule 83-123(a).  As stated in the court's standard order relating

24  cases pursuant to this rule, no consolidation of the cases is effected by their assignment to the

25  /////

26  /////

same judge or judges,[3] and each case proceeds as a separate case.  The relating of cases for purposes of judicial economy has no bearing on the relation back of new claims alleged in a party's amended pleadings pursuant to Rule 15(c) of the Federal Rules of Civil Procedure.

The court turns to a comparison of the claims raised in petitioner Fenenbock's original petition and those raised in his amended petition.  The claims alleged in the original petition are as follows:

> Ground one:  Petitioner was deprived of due process and a fair trial by the court's failure to instruct on the lesser included offenses of second degree murder and manslaughter;

> Ground two:  Petitioner's conviction of first degree murder must be vacated because of constitutionally insufficient evidence of premeditation and deliberation beyond a reasonable doubt;

> Ground three:  Petitioner was deprived of due process and a fair trial by the court's failure to instruct on provocation as a basis of reasonable doubt as to the prosecution's proof of premeditation and deliberation;

> Ground four:  Petitioner was denied or deprived of due process by the trial court's failure to exclude the testimony of child witness Randy Hogrefe; the testimony was severely tainted and should not have been allowed because the child unequivocally denied any knowledge of the killing for weeks after the murder but was coerced and coached for a period of over two years to give testimony planted in him by Child Protective Services, the police, and prosecutors, who told him what to say and what not to say during the trial;

> Ground five:  Petitioner was denied his right of confrontation by the trial court's artificial time restriction that precluded cross-examination of key witness Randy Hogrefe's prior inconsistent statements;

---

[3]   The related case order filed in the Hamby, Fenenbock, and Frazier cases in 1997 specifically stated that "[t]he parties should be aware that relating the cases under Local Rule 83-123 merely has the result that the three (3) actions are assigned to the same judge and magistrate judge; no consolidation of the actions is effected." (Order filed Dec. 24, 1997, in case No. CIV S-97-0164, case No. CIV S-97-1731, and case No. CIV S-97-2196, at 2.)  Likewise, the related case order filed in the Hamby, Fenenbock, Frazier, Bond, and MacCarlie cases in 2001 states that "[t]he parties should be aware that relating these five cases under Local Rule 83-123 merely has the result that the actions are assigned to the same judge; no consolidation of the actions is effected." (Order filed Dec. 12, 2001, in case No. CIV S-97-0164, case No. CIV S-97-1731, case No. CIV S-97-2196, case No. CIV S-99-2150, and case No. CIV S-00-1830, at 2.)

Ground six:  Petitioner was deprived of his right of confrontation and to present a defense by the trial court's preclusion of evidence regarding an incident in which Randy Hogrefe falsely accused another individual (his foster parent) of a violent act;

Ground seven:  Petitioner was deprived of due process by the prosecution's unfair sand-bagging of the defense by presenting three witnesses in rebuttal, thereby depriving the defense of appropriate cross-examination and giving the prosecution an unfair advantage, when the witnesses should have been presented during the prosecution's case-in-chief.

In addition, the original petition includes the following statement under the title "Note of Attention":

Petitioner submitts [sic] to the court this Note of Attention, which addresses the issue of Newly discovered evidence which not only substantiates petitioner's innocence, but also establishes that petitioner had no involvement in the murder of "Hop" Summar. Petitioner, from day one of this case and throughout the trial has expressed his complete innocence of the charges that were alleged against him, and still do to this day.

The information/newly discovered evidence which petitioner speaks of is the testimony of "Bird MacCarlie" at his own trial in November 1994, at which time he testified that he in fact did kill Summar.  Further facts of the case establishes that the knife which belonged to Tex Lockley did in-fact contain the blood of Summar on it, as did the clothes and shoes he wore and his truck.  Yet there was no physical evidence that placed petitioner at the scene of the crime or establishing any participation in the crime.

Petitioner believes that this evidence/information should have been presented to the Appellate and Cal. Supreme Court as a matter of Judicial Notice, but in light of the facts presented, petitioner does not have access to the case of Bird MacCarlie, nor has petitioner been given all the requested transcripts of his own case which petitioner is continuously requesting.

Again, as was done in the trial against petitioner, petitioner asserts his innocence, and is innocent of the charge of murder.

(Pet. at 6.)  Petitioner's Note of Attention is first referenced in petitioner's response to No. 13 of the form petition, which instructs as follows:  "If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them."  (Pet. at 5.)

27

1          In findings and recommendations filed in the Hamby, Fenenbock, and Frazier

2   cases on November 1, 2001, the undersigned recommended that petitioners' joint motion to stay

3   and hold in abeyance be granted.  The undersigned noted that it was the position of petitioner

4   Fenenbock's counsel that the information stated in petitioner's Note of Attention was not a

5   claim.  (Findings & Recommendations filed Nov. 1, 2001, in the Hamby, Fenenbock, and Frazier

6   cases, at 3 n.4.)  In accordance with counsel's position and with Supreme Court and Ninth

7   Circuit authority that then required dismissal of mixed petitions and expressly prohibited the

8   staying of a mixed petition, the undersigned declined to construe petitioner's Note of Attention as

9   a claim because doing so would have necessitated (1) dismissal of the original petition as a

10  mixed petition containing one unexhausted claim and (2) the filing of an amended petition

11  alleging the seven exhausted claims.[4]  Such action would have further delayed petitioner

12  Fenenbock's return to state court to exhaust additional claims. In light of the Supreme Court's

13  recent determination that district courts have the authority to stay mixed petitions, Rhines v.

14  Weber, 544 U.S. 269 (2005), and new law concerning relation back, the undersigned has

15  reconsidered the decision not to construe the Note of Attention as a claim. The undersigned finds

16  that the pro se petitioner's Note of Attention, set forth in response to the form inquiry regarding

17  grounds for relief not previously presented in any other court, constitutes a claim.  The claim will

18  be referred to as Claim 8.  In light of this determination, it is unnecessary to consider whether the

19  Note of Attention provided respondent with notice of a future claim, whether respondent

20  previously made any concession regarding such notice, and whether notice is relevant to the issue

21  of relation back as interpreted by the Supreme Court.

22  _____

23       [4] See Anthony v. Cambra, 236 F.3d 568, 575 (9th Cir. 2000) ("Our precedent unequivocally
    authorizes district courts to stay fully exhausted federal petitions pending exhaustion of other
24  claims."); Calderon v. United States Dist. Court (Taylor), 134 F.3d 981, 987-88 (9th Cir. 1998)
    (recognizing the district court's authority to allow petitioner to amend a mixed petition to delete
25  unexhausted claims and then hold the completely exhausted petition in abeyance pending
    exhaustion); Greenawalt v. Stewart, 105 F.3d 1268, 1274 (9th Cir. 1997) (recognizing that the
26  district court has discretion to stay a fully exhausted petition).

Respondent does not dispute the timeliness of petitioner Fenenbock's Claims 3B, 3C, 6, 7, and 8, and the undersigned finds that those claims relate back to the original petition as follows:  new Claim 3B relates back to original Claim 5; new Claim 3C to original Claim 6; new Claim 6 to original Claim 2; new Claim 7 to original Claims 1 and 3; and new Claim 8 to original Claim 7.

Petitioner Fenenbock's disputed Claims 1, 2, 3A, 4, 5, 9, and 10 are as follows:

1.  Petitioner is innocent of the murder of Gary Summar, as demonstrated by the testimony of co-defendant MacCarlie in the second trial, exculpatory information recently provided by co-defendant Leafe Dodds, and the testimony of Carmel Suther in the second trial;

2.  Petitioner was denied his rights to present a defense and to compulsory process by the trial court's scheduling of the trials so that petitioner's trial was scheduled and conducted before the trial of co-defendants MacCarlie and Dodds;

3.  Trial court errors in rulings regarding the presentation and impeachment of the testimony of Randy Hogrefe individually and together served to deprive petitioner of his rights to present a defense, to confront the witnesses against him, and to due process; the errors included

A.  The trial court's refusal to order that any of the defense attorneys and/or their investigators be permitted to meet with Hogrefe prior to conducting his cross-examination despite the fact that the prosecutor was allowed to meet with Hogrefe on several occasions before and after the trial;

4.  The prosecutor committed prejudicial misconduct that denied petitioner a fair trial and due process, as follows:

A.  The prosecutor knowingly presented the false testimony of Trinity County Sheriff's Deputy Dan Kartchner;

B.  During closing argument, the prosecutor argued facts outside the record and interjected his opinion about the credibility, or lack thereof, of the witnesses;

C.  In arguing his theory of the case and the reasonable inferences to be gleaned from the evidence, the prosecutor took advantage of the

unconstitutional and overreaching investigative
techniques used by Kartchner, thereby depriving
petitioner of his rights to due process and a fair trial,
as follows:  Kartchner told virtually all 40 witnesses
he talked to that they were either a witness for the
prosecution or a suspect in the case; Kartchner
failed to record witness interviews and then
testified, based on his recollection of those
interviews, that certain witnesses had made prior
statements inconsistent with their trial testimony;
Kartchner turned off the tape recorder at a critical
point in an interview with Randy Hogrefe on
October 18, 1997; Kartchner destroyed a written
statement by witness Sutton; the prosecutor relied
on Kartchner's allegations of prior inconsistent
statements by witnesses during his closing
argument;

D.  Petitioner's rights to due process, to be present
at all critical stages of the trial, to have the jury
decide every material fact beyond a reasonable
doubt, to a fair and impartial jury, and to a jury trial
were violated when a videotape made by Judge
Letton, who presided over the pretrial proceedings
in Trinity County, was shown to prospective jurors
during jury orientation outside the presence of
petitioner, his counsel, and the presiding trial judge;

5.  Petitioner was denied his rights to a fair and impartial jury, to a
jury trial and to due process by the jurors being shown a videotape,
outside the presence of petitioner and his counsel,  featuring Trinity
County Superior Court Judge Letton which oriented jurors to the
case by informing them that the trial had moved due to pretrial
publicity and recounting certain facts as not appearing to be in
dispute.

9.  Petitioner received ineffective assistance of trial counsel as
follows:

A.  Counsel failed to adequately challenge the
testimony of Randy Hogrefe with regard to material
inconsistencies between his trial testimony and prior
statements Hogrefe had made;

(1)  Counsel failed to present
evidence and argument to support the
motion for defense access to Randy
Hogrefe during trial;

/////

30

(2)  Counsel's preparation and presentation of expert testimony was incompetent and ineffective;

(3)  Counsel's examination of Sally McFall was incompetent;

(4)  Counsel failed to investigate or demonstrate that Randy's knowledge of the crime came from outside sources;

B.  Counsel failed to investigate or obtain the exculpatory testimony of co-defendants MacCarlie and Dodds;

C.  Counsel failed to inform petitioner of the consequences of asserting his speedy trial rights;

D.  Counsel failed to impeach Kartchner regarding media coverage of the crime;

E.  Counsel failed to present evidence of investigating Kartchner's bad faith and dishonesty;

F.  Counsel failed to object to the prosecutorial misconduct alleged in Claim 4;

G.  Counsel failed to advise petitioner about his right to testify or to prepare him to testify;

H.  Counsel failed to investigate or present corroborating alibi evidence;

I.  Counsel failed to object to the introduction of petitioner's knife into evidence;

J  Counsel failed to object to the jury view script;

K.  Counsel failed to object to the videotape shown during jury orientation;

10.  The cumulative effect of the errors raised in Claims 1 - 9 warrant reversal of petitioner's conviction.

After careful consideration of petitioner's original and amended petitions, as well as the parties' arguments, the undersigned finds that petitioner Fenenbock's Claims 1 and 2 share a common core of operative facts with Claim 8, as alleged in petitioner's Note of Attention, and

petitioner's Claim 3A shares a common core of operative facts with the original Claim 4.  In this regard, Claims 1 and 2 allege that petitioner is innocent as demonstrated by the testimony given and statements made by MacCarlie, Dodds and Suther after his trial and that he was denied his right to present a defense by the scheduling of his trial before those of MacCarlie and Dodds.  In his original Claim 8, labeled by petitioner as a Note of Attention[5], petitioner set forth the essential factual predicates of Claims 1 and 2 by alleging his factual innocence of the murder charge as established by newly discovered evidence and complaining of the fact that testimony given subsequent to his own trial establishing his innocence was not considered.  Likewise, in new claim 3A petitioner alleges that the trial court violated his right to due process by refusing to order that the defense be permitted to meet with Randy Hogrefe prior to cross-examining him in light of the prosecution's unfettered access to this crucial witness.  In his original petition, as a fourth ground for relief, petitioner alleged that he was denied due process by the trial court's failure to exclude Hogrefe's testimony because that testimony was coerced, coached and planted by Child Protective Services, the police and prosecutors over a two year period.  These claims are based upon the same set of facts and share a common time and place.

The same cannot be said, however, for petitioner's new Claims 4, 5, and 9.  Those claims do not share a common core of operative facts with any of petitioner's original claims and do not relate back to the original petition.  In this regard, these claims allege specific acts of prosecutorial misconduct, specific instances of ineffective assistance by trial counsel and the trial jurors' exposure to an introductory videotape presentation outside the presence of petitioner and his counsel.  Fenenbock's original petition does not recite any of the facts needed to support these new claims.  Rather, the claims set out in his original petition are based on allegations of jury instruction error, insufficiency of the evidence, the manipulated testimony of Randy

---

[5] Whether the Note of Attention included in the original federal petition is considered to be a separate claim or not, it remains the case that the essential factual predicate for petitioner's current Claims 1 and 2 was set forth in his original petition filed with this court.

1   Hogrefe, prosecutorial misconduct based upon the withholding of three specific witnesses in

2   rebuttal and factual innocence based upon new evidence that petitioner was precluded from

3   presenting because his trial preceded those of certain co-defendants.  Thus, the original claims

4   and new claims 4, 5 and 9 are based upon completely separate sets of facts.

5          Finally, Claim 10, alleging the cumulative effect of individual errors, relates back

6   to the original claims to the extent that petitioner asserts the prejudicial effect of the errors

7   alleged in the original claims.  If respondent's motion to dismiss is granted, petitioner should be

8   permitted to file a second amended petition alleging the claims currently alleged in the first

9   amended petition as Claims 1, 2, 3, 6, 7, and 8, along with a cumulative error claim grounded on

10  the prejudicial effect of the errors alleged in Claims 1, 2, 3, 6, 7, and 8.  So limited, petitioner's

11  new claim of cumulative error would arise from the same common core of operative facts alleged

12  in the original petition and would relate back to that pleading.  See Woodward v. Williams, 263

13  F.3d 1135, 1142 (10th Cir. 2001) (upholding relation back of a claim that was based on the same

14  facts as the original pleading but clarified or amplified the claim or theory), cited with approval

15  in Mayle, 125 S. Ct. at 2574 n.7.

16  III.  Equitable Tolling

17         The Ninth Circuit Court of Appeals determined in 1997 that the one-year period

18  of limitation contained in 28 U.S.C. § 2244(d) is a statute of limitations subject to tolling.

19  Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in

20  part on other grounds by Calderon v. United States Dist. Court (Kelly), 163 F.3d 530 (9th Cir.

21  1998).  The court cautioned that "[e]quitable tolling will not be available in most cases, as

22  extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's

23  control make it impossible to file a petition on time."  128 F.3d at 1288-89 (citing Alvarez-

24  Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1997)).  The availability of equitable

25  tolling of the AEDPA statute of limitations must be limited because courts are expected to "take

26  seriously Congress's desire to accelerate the federal habeas process."  Calderon, 128 F.3d at

1289.  See Corjasso v. Ayers, 278 F.3d 874, 877 (9th Cir. 2002) (describing the Ninth Circuit's

standard as setting a "high hurdle" to the application of equitable tolling).

Even where extraordinary circumstances are shown, equitable tolling will not be

available unless the petitioner diligently pursued his claims.  128 F.3d at 1289.  It is only when

external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely

habeas petition that equitable tolling may be appropriate.  Miles v. Prunty, 187 F.3d 1104, 1107

(9th Cir. 1999).  The petitioner bears the burden of demonstrating grounds for equitable tolling.

Espinoza-Matthews v. California, 432 F.3d 1021, 1026 (9th Cir. 2005); Miranda v. Castro, 292

F.3d 1063, 1065 (9th Cir. 2002).

Since recognizing the availability of equitable tolling of the AEDPA context in

1997, the Ninth Circuit Court of Appeals has addressed the issue many times.  For the most part,

and most often in unpublished decisions, the appellate court has affirmed district court decisions

denying equitable tolling.  Typical decisions affirming the denial of equitable tolling include

Miranda v. Castro, 292 F.3d 1063, 1067-68 (9th Cir. 2002), in which the court affirmed the

district court's denial of equitable tolling where the pro se petitioner filed his petition untimely

on the basis of erroneous information provided by the attorney appointed to represent him on

direct appeal, and Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001), in which the court

affirmed the district court's denial of equitable tolling where the petitioner's attorney

miscalculated the limitations period.  In Brambles v. Duncan, 412 F.3d 1066, 1070-71 (9th Cir.),

cert. denied, ___ U.S. ___, 126 S. Ct. 485 (2005), the Ninth Circuit recently affirmed the district

court's denial of equitable tolling where the petitioner filed an untimely petition after he had

previously filed a timely mixed petition but, pursuant to district court instructions that were not

affirmatively misleading, chose to dismiss the entire petition and return to state court to exhaust

additional claims.  See also Raspberry v. Garcia, 448 F.3d 1150, 1153-54 (9th Cir. 2006)

(affirming the denial of equitable tolling because neither the district court's failure to advise the

petitioner of the right to amend his petition to include unexhausted claims nor petitioner's

1   inability to correctly calculate the limitations period were extraordinary circumstances warranting

2   equitable tolling).

3          Due to the highly fact-dependent nature of the grounds for equitable tolling, the

4   Ninth Circuit has occasionally remanded a case for further factual development of an issue such

5   as a petitioner's mental illness, a petitioner's access to his legal materials, and the adequacy of a

6   particular prison law library at a specific time.  See, e.g., Mendoza v. Carey, 449 F.3d 1065,

7   1069-71 (9th Cir. 2006) (remanding for appropriate development of the record on the issue of

8   whether petitioner's inability to obtain Spanish-language materials or procure translation

9   assistance was an extraordinary circumstance preventing him from filing a timely habeas

10   petition); Laws v. Lamarque, 351 F.3d 919, 922-24 (9th Cir. 2003) (remanding for development

11   of the record or an evidentiary hearing on the issue of whether the petitioner's mental illness

12   prevented him from timely filing his habeas petition); Lott v. Mueller, 304 F.3d 918, 923 (9th

13   Cir. 2002) (remanding for development of the record related to the availability of equitable

14   tolling where the petition was filed, at most, twenty days late, and the pro se petitioner alleged in

15   his traverse that he was denied access to his legal files for eighty-two days during the one-year

16   period of limitation due to two temporary transfers for court proceedings in an unrelated civil

17   court matter); Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (remanding

18   for further factual development related to the availability of equitable tolling or a finding of a

19   state-caused impediment under § 2244(d)(1)(B) where the petitioner alleged that the prison law

20   library contained no legal materials describing the AEDPA and its one-year limitations period

21   until June of 1998).

22          The Ninth Circuit has affirmed or mandated equitable tolling in those relatively

23   few cases where a diligent petitioner was unable to file a timely petition due to a significant delay

24   caused by an external force such as the district court, prison officials, or, but rarely, the

25   petitioner's own habeas counsel.  See Espinoza-Matthews v. California, 432 F.3d 1021 (9th Cir.

26   2005) (applying equitable tolling for the period of almost eleven months during which the pro se

petitioner was housed in administrative segregation for his own protection and was denied access

to his legal materials throughout that time despite his diligent efforts to obtain access); Spitsyn v.

Moore, 345 F.3d 796 (9th Cir. 2003) (finding the misconduct of the petitioner's attorney

sufficiently egregious to justify equitable tolling where the attorney was hired nearly a full year in

advance of the deadline for filing a federal petition but did not prepare and file the petition

despite the fact that the petitioner and his mother contacted the attorney numerous times seeking

action and where, despite a request for return of the file, the attorney retained the file for the

duration of the limitations period and two months beyond); Smith v. Ratelle, 323 F.3d 813 (9th

Cir. 2003) (applying equitable tolling where the district court had previously dismissed the pro se

petitioner's timely habeas petition without giving him an opportunity to file an amended petition

as an alternative to dismissal); Stillman v. LaMarque, 319 F.3d 1199 (9th Cir. 2003) (applying

equitable tolling where the prison litigation coordinator promised the petitioner's attorney that he

would obtain the prisoner's signature in time for filing the petition but broke his promise and

caused the petition to be late); Corjasso v. Ayers, 278 F.3d 874 (9th Cir. 2002) (applying

equitable tolling where the district court's initial dismissal of a timely petition was improper and

the court's lengthy delay in ruling that the amended petition was unexhausted consumed 258

days of the pro se petitioner's one-year period of limitation and caused the petitioner to lose time

that would otherwise have been available for exhausting state court remedies); Miles v. Prunty,

187 F.3d 1104 (9th Cir. 1999) (applying equitable tolling where prison officials delayed the pro

se petitioner's request that a check be drawn on his prison trust account for payment of the filing

fee); Calderon (Kelly), 163 F.3d 530 (applying equitable tolling in a death penalty case because

of an earlier court-ordered stay of the habeas proceedings, the petitioner's alleged mental

incompetency, and the court's mistaken dismissal of the timely habeas proceedings); Calderon

(Beeler), 128 F.3d 1283 (holding in a death penalty case that the withdrawal of court-appointed

habeas counsel, who moved out of state and whose work product was not usable by replacement

/////

36

1    counsel, qualified as an extraordinary circumstance beyond petitioner's control that justified

2    tolling the statute of limitations).

3            Although the Supreme Court has recently "framed the equitable tolling standard in

4    less absolute terms" than the Ninth Circuit's well established test of "impossible to file a petition

5    on time," the Ninth Circuit has not yet decided whether the Supreme Court's formulation "has

6    lowered the bar somewhat." Espinoza-Matthews, 432 F.3d at 1026 n.5 (citing Pace v.

7    DiGuglielmo, 544 U.S. 408, 418 (2005)).  In Pace, the Court noted that it has "never squarely

8    addressed the question whether equitable tolling is applicable to AEDPA's statute of

9    limitations."  544 U.S. at 418 n.8.  The Court found it unnecessary to reach the question in Pace

10   because the petitioner's failure to establish diligence would preclude the application of equitable

11   tolling to his untimely petition.  Id. at 418-19.  The Supreme Court observed that "[g]enerally, a

12   litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that he has

13   been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his

14   way."  544 U.S. at 418 (citing  Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990)).

15   See also Raspberry, 448 F.3d at 1153.

16          In the five related cases before this court, the petitioners rely in part on Justice

17   Stevens's concurrence in Duncan v. Walker, 533 U.S. 182 (2001) (Stevens, J., concurring in part

18   and concurring in the judgment).  Justice Stevens, joined by Justice Souter, agreed with the

19   Court's decision that the statutory tolling provision contained in § 2244(d)(2) authorizes tolling

20   while a petitioner is pursuing state, but not federal, post-conviction remedies.  Id.  Citing the

21   general equitable powers of federal courts, Justice Stevens observed that those courts may deem

22   a limitations period tolled as a matter of equity and "might very well conclude that tolling is

23   appropriate based on the reasonable belief that Congress could not have intended to bar habeas

24   review for petitioners who invoke the court's jurisdiction within the 1-year interval prescribed by

25   AEDPA."  Id. at 182-83.  He speculated that, just as the federal courts of appeals uniformly

26   created a one-year grace period running from the date of AEDPA's enactment for all prisoners

37

1  whose state convictions became final prior to AEDPA, "federal courts may well conclude that

2  Congress simply overlooked the class of petitioners whose timely filed habeas petitions remain

3  pending in district court past the limitations period, only to be dismissed after the court belatedly

4  realizes that one or more claims have not been exhausted." Id. at 183-84.  However, equitable

5  tolling was not the only remedy suggested by Justice Stevens for the class of petitioners he

6  described.  He also found "no reason why a district court should not retain jurisdiction over a

7  meritorious claim and stay further proceedings pending the complete exhaustion of state

8  remedies," especially when failure to do so would foreclose federal review of a meritorious claim

9  because of the limitations period.  Id. at 183.  See also id. at 182 (Souter, J. concurring) ("I have

10 joined Justice Stevens's separate opinion pointing out that nothing bars a district court from

11 retaining jurisdiction pending complete exhaustion of state remedies, and that a claim for

12 equitable tolling could present a serious issue on facts different from those before us.").

13      The Ninth Circuit has not hesitated to use its equitable powers to protect

14 petitioners in the class described by Justice Stevens.  A stay-and-abeyance procedure was

15 approved by the Ninth Circuit soon after AEDPA was enacted.  See Calderon v. United States

16 Dist. Court (Thomas), 144 F.3d 618, 620 (9th Cir. 1998) (endorsing a procedure permitting

17 withdrawal of unexhausted claims and abeyance); Calderon v. United States Dist. Court (Taylor),

18 134 F.3d 981, 987-88 (9th Cir. 1998) (recognizing the district court's authority to allow a

19 petitioner to amend a mixed petition to delete unexhausted claims and then hold the completely

20 exhausted petition in abeyance pending exhaustion); Greenawalt v. Stewart, 105 F.3d 1268, 1274

21 (9th Cir. 1997) (recognizing that the district court has discretion to stay a fully exhausted

22 petition).  See also Fetterly v. Paskett, 997 F.2d 1295, 1301-02 (9th Cir. 1993) (holding in a pre-

23 AEDPA case that the district court abused its discretion in denying a capital habeas petitioner's

24 motion to stay a petition containing only exhausted claims pending exhaustion of additional

25 claims in state court).  The Ninth Circuit has also applied the alternate remedy of equitable

26 tolling where a diligent petitioner was unable to file a timely petition due to an improper

1    dismissal or other mishandling and consequent delay caused by the district court.  See Smith, 323

2    F.3d 813; Corjasso, 278 F.3d 874; Calderon (Kelly), 163 F.3d 530.  Moreover, in applying

3    equitable tolling in Corjasso, decided after Duncan, the court commented that its decision to toll

4    the statute "during part of the pendency of [Corjasso's first federal habeas case] is not contrary to

5    the rule in Duncan, for we do not hold that equitable tolling of the statute is appropriate for the

6    entire time Corjasso's petitioner remained in federal court" but "only during the delay caused by

7    the extraordinary circumstances beyond Corjasso's control."  278 F.3d at 879.

8           The petitioners in the five related cases before this court do not fall within the

9    class of petitioners described by Justice Stevens in his concurring opinion in Duncan.  Here, the

10   five petitioners filed timely habeas petitions raising only exhausted claims.  Their petitions were

11   not dismissed, and all five petitioners are proceeding in their original federal habeas actions.

12   These petitioners did not invoke the court's jurisdiction over meritorious claims within the one-

13   year interval prescribed by AEDPA, only to find habeas review of those claims forever barred

14   due to the court's failure to retain jurisdiction over the timely-filed claims while the petitioners

15   returned to state court to exhaust additional claims.  Nor are these petitioners and the petitioner in

16   Corjasso similarly situated.  Corjasso, 278 F.3d at 878 (applying equitable tolling where the

17   district court's initial dismissal of a timely petition was improper and the court's lengthy delay in

18   ruling that the amended petition was unexhausted consumed 258 days of the pro se petitioner's

19   one-year period of limitation and caused the petitioner to lose time that would otherwise have

20   been available for exhausting state court remedies).

21          The undersigned finds that equitable tolling should be applied during a portion of

22   these federal proceedings, but, as the Ninth Circuit held in Corjasso, "only during the delay

23   caused by the extraordinary circumstances beyond [petitioners'] control."  278 F.3d at 879.  It

24   was beyond the control of petitioners Hamby, Fenenbock, and Frazier that when judgment was

25   entered against them on March 16, 1994, five co-defendants remained to be tried in a case in

26   which the prosecution's theory was that all eight conspired to murder Gary Summar and

1    participated in his murder.  Trial did not commence for co-defendants Bond, MacCarlie, and

2    Dodds until September 1994, and judgment was not entered against co-defendants Bond and

3    MacCarlie until January 20, 1995.  The trial for co-defendants Adcock and Lockley was not

4    conducted until 1995.  It was beyond the control of petitioners Hamby, Fenenbock, and Frazier

5    that their appeals had to be filed in 1994 prior to the trials of five co-defendants.  Petitioners

6    Hamby, Fenenbock, and Frazier were not present during the two subsequent trials, had no access

7    to the transcripts of those trials, were in custody during pretrial litigation, were incarcerated after

8    sentencing, and were unrepresented after the California Supreme Court denied review on direct

9    appeal on October 2, 1996.  Although the three petitioners successfully filed timely federal

10   habeas petitions, the pro se petitions filed by petitioner Hamby on January 31, 1997, petitioner

11   Fenenbock on September 12, 1997, and petitioner Frazier on November 20, 1997, were filed

12   without access to any records from the other two trials involving their co-defendants.  Counsel

13   was appointed for petitioner Fenenbock on December 4, 1997, less than a month prior to the

14   expiration of the AEDPA statute of limitations under § 2244(d)(1)(D).  Counsel for petitioners

15   Hamby and Frazier were appointed on January 15, 1998, two weeks after the statute of

16   limitations expired under § 2244(d)(1)(D).

17           By August 31, 1998, counsel for petitioners Hamby, Fenenbock, and Frazier had

18   obtained a substantially complete state court record for the three trials.  (See Joint Status Report

19   and Stipulation lodged in the Hamby, Fenenbock, and Frazier cases on Aug. 28, 1998; Decl. of

20   Daniel J. Broderick attached to Pet'r Frazier's Opp'n filed Aug. 23, 2005, ¶¶ 7 & 8.)  The

21   undersigned finds that the delay caused by extraordinary circumstances beyond the control of

22   petitioners Hamby, Fenenbock, and Frazier ended by August 31, 1998.  While the state court

23   record is voluminous, portions of the record were obtained prior to August 31, 1998.  Moreover,

24   petitioners Hamby, Fenenbock, and Frazier have not shown that it was impossible to identify new

25   claims and seek a stay within one year after obtaining a substantially complete state court record

26   for the three trials on August 31, 1998.  Indeed, in their joint status report filed May 14, 1999,

40

counsel for petitioners Hamby, Fenenbock, and Frazier advised the court that all three of them had read the transcripts for their joint trial and had jointly identified several potential constitutional claims, some of which had been presented to the state courts and some of which had not. (See Joint Status Report filed by petitioners Hamby, Fenenbock, and Frazier on May 14, 1999, at 2.) In their May 14, 1999 status report, petitioners' counsel also indicated that they had recently obtained and viewed the videotape that was played for potential jurors. (Id.) Although the statute of limitations for petitioners' videotape claims may have run from a date later than August 31, 1998, any delay after August 31, 1998 with regard to petitioners' other new claims is attributable to petitioners rather than to external forces outside their control.

Equitable tolling from December 31, 1996, when the judgment for petitioners Hamby, Fenenbock, and Frazier became final, to August 31, 1998, when extraordinary circumstances beyond these petitioners' control ceased to exist, does not render petitioners' amended federal petitions timely. Given that period of tolling, the one-year period of limitation began to run on September 1, 1998, and expired on August 31, 1999. The state exhaustion petitions filed by petitioners Hamby and Frazier on November 26, 2001, and by petitioner Fenenbock on December 10, 2001, were filed more than two years too late to toll the statute under § 2244(d)(2), and the amended federal petitions filed by these three petitioners in 2003 were filed approximately four years too late.

Other arguments advanced by petitioners in favor of additional equitable tolling are unpersuasive. It is undisputed that respondents' counsel stipulated to continuances of status conferences up to October 2001 and did not object to continuances of various deadlines and hearing dates. However, the petitioners have not demonstrated that respondents waived the statute of limitations, and there is no evidence that petitioners were affirmatively misled by

/////

/////

/////

1   respondents or the court with regard to the statute of limitations.[6]  The need to prepare and file

2   state exhaustion petitions was not an external force that made it impossible for petitioners

3   Hamby, Fenenbock, and Frazier to prepare and file state exhaustion petitions within a year after

4   August 31, 1998.

5          The petitioner in this case is not entitled to equitable tolling for a period of time

6   sufficient to render his amended petition timely.

7   IV.  Actual Innocence

8          A habeas petitioner's "otherwise-barred claims [may be] considered on the merits

9   . . . if his claim of actual innocence is sufficient to bring him within the 'narrow class of cases . . .

10  implicating a fundamental miscarriage of justice.'"  Carriger v. Stewart, 132 F.3d 463, 477 (9th

11  Cir. 1997) (quoting Schlup v. Delo, 513 U.S. 298, 315 (1995)).  The petitioner's claim of actual

12  innocence must be supported "with new reliable evidence–whether it be exculpatory scientific

13  evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented

14  at trial."  Schlup, 513 U.S. at 324.  The petitioner "must show that, in light of all the evidence,

15  including evidence not introduced at trial, 'it is more likely than not that no reasonable juror

16  would have found petitioner guilty beyond a reasonable doubt.'"  Majoy v. Roe, 296 F.3d 770,

17  776 (9th Cir. 2002) (quoting Schlup, 513 U.S. at 327).  See also Griffin v. Johnson, 350 F.3d

18  956, 962-63 (9th Cir. 2003); Sistrunk v. Armenakis, 292 F.3d 669, 672-73 (9th Cir. 2002) (en

19  banc); Gandarela v. Johnson, 286 F.3d 1080, 1086 (9th Cir. 2002).  Where a habeas petitioner

20  alleges actual innocence, the federal court must first consider all alternative grounds for relief

21  from default that might obviate the need to reach the actual innocence question.  Dretke v. Haley,

22  541 U.S. 386, 388-89 (2004).

23  /////

24

25          [6] Indeed, at least as early as April 2000 counsel for respondent was suggesting in opposition
    to a discovery motion that any new claims presented in an amended petition may be procedurally
26  barred.

1        Having considered all alternative grounds for relief from default above, the

2   undersigned turns to petitioner Fenenbock's claim of actual innocence.  The undersigned has

3   found that petitioner's new Claim 1, alleging actual innocence, relates back to such a claim

4   alleged in the original petition in petitioner's pro se Note of Attention.  In the present context of

5   respondent's motion to dismiss claims as untimely, the undersigned does not address

6   respondent's contention that a claim of actual innocence is not itself a constitutional claim

7   entitling a petitioner to habeas relief.  Respondent's argument and, if appropriate, the merits of

8   the actual innocence claim will be addressed at a later time.

9        In order to decide whether petitioner's actual innocence claim brings his entire

10  amended petition within an exception to the AEDPA statute of limitations, the court must

11  determine whether petitioner's claim of actual innocence is supported by new reliable evidence

12  that would have affirmatively proved his actual innocence had that evidence been presented at

13  trial.  The undersigned has carefully considered the claim of actual innocence as alleged in

14  petitioner's first amended petition as well as all arguments concerning the evidence presented at

15  petitioner Fenenbock's trial and the new evidence cited by petitioner as evidence of actual

16  innocence.  (See Pet'r Fenenbock's Am. Pet. at 10-19; Pet'r Fenenbock's Opp'n to Resp't's

17  Second Mot. to Dismiss filed Aug. 23, 2005, at 9-19; Resp't's Reply to Pet'r Fenenbock's Opp'n

18  filed September 2, 2005, at 2-7.)  Petitioner Fenenbock's new evidence consists primarily of

19  co-defendant MacCarlie's subsequent testimony, a declaration by co-defendant Dodds executed

20  in 2002, and a perceived inconsistency in the testimony of Carmel Suther at the two trials, along

21  with evidence attacking the credibility of prosecution witnesses Randy Hogrefe and Dan

22  Kartchner.  This showing falls far short of presenting "'evidence of innocence so strong that a

23  court cannot have confidence in the outcome of the trial.'"  Sistrunk, 292 F.3d at 673 (quoting

24  Schlup, 513 U.S. at 316).

25       In this regard, MacCarlie's testimony at his own subsequent trial cannot be

26  characterized as either compelling or exculpatory as to petitioner.  In that testimony MacCarlie

43

described being outside his body, looking down on the scene of the killing from a tree and

watching a man with his own face knock Summar to the ground and stab him numerous times.

Nonetheless, MacCarlie testified that he didn't believe he killed Summar.  Defense expert

witnesses testified that MacCarlie suffered from alcoholic blackouts and Post-Traumatic Stress

Disorder, both of which could render him unable to distinguish reality from fantasy.  The 2002

Dodds affidavit, likewise does not constitute strong evidence of petitioner's innocence.  First,

Dodds was a co-defendant of petitioner and was acquitted of the murder.   Moreover, the version

of the events he recounted in his 2002 declaration puts petitioner at the scene of a confrontation

between MacCarlie and Summar and merely suggests the possibility that petitioner may have left

before Summar was killed.  Even if believed, the declaration does not establish such was the

case.  Petitioner's remaining arguments are clearly insufficient under Schlup.   The alleged

inconsistency between criminalist Suther's testimony at petitioner's trial regarding the nature of

the blood on his knife and that given at MacCarlie's trial is minor at best.  Finally, neither

petitioner's claims of new evidence attacking the credibility of prosecution witnesses Randy

Hogrefe and Dan Kartchner or of an alibi defense are supported by any actual new evidence,

compelling or otherwise.

Absent such new reliable evidence, petitioner Fenenbock has not presented a

colorable claim of actual innocence under Schlup.  Due to the inadequacy of petitioner's

supporting evidence, his claim of actual innocence fails to bring him within the "'narrow class of

cases . . . implicating a fundamental miscarriage of justice.'"  Carriger, 132 F.3d at 477 (quoting

Schlup, 513 U.S. at 315).  Petitioner Fenenbock's amended petition is not rendered timely by his

claim of actual innocence.

CONCLUSION

IT IS RECOMMENDED that respondent's August 4, 2005 motion to dismiss be

granted with leave to file a second amended petition alleging the claims alleged in petitioner's

/////

1  first amended petition as Claims 1, 2, 3, 6, 7, and 8, along with a cumulative error claim

2  grounded solely on the prejudicial effect of the errors alleged in those six claims.

3          These findings and recommendations will be submitted to the United States

4  District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

5  twenty days after being served with these findings and recommendations, any party may file and

6  serve written objections with the court.  A document containing objections should be titled

7  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to objections

8  shall be filed and served within ten days after service of the objections.  The parties are advised

9  that failure to file objections within the specified time may, under certain circumstances, waive

10  the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

11  1991).

12  DATED: September 11, 2006.

13

14  _____

15  DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

16  DAD:13
    fene1731.mtd2

17

18

19

20

21

22

23

24

25

26